**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Simmons, Inc.,

Plaintiff,

v.

Koronis Parts, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1984 ADM/RLE

---

Alan M. Anderson, Esq. and Cynthia M. Klaus, Esq., Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, appeared for and on behalf of the Plaintiff.

David R. Fairbairn, Esq., Michael J. Pape, Esq., and Dina M. Colling, Esq., Kinney & Lange, P.A., Minneapolis, MN, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

On June 13, 2001, this matter came on for hearing before the undersigned United States District Court Judge pursuant to Defendant's Motion for Summary Judgment [Doc. No. 51], Plaintiff's Motion for Partial Summary Judgment [Doc. No. 65], and Plaintiff's Motion to Stay [Doc. No. 66]. For the reasons set forth below, Defendant's Summary Judgment Motion is denied, Plaintiff's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion to Stay is denied.

## II. BACKGROUND

Plaintiff Simmons, Inc. alleges that a patent it holds on a snowmobile ski is being infringed by Defendant Koronis Parts, Inc. ("Koronis"). As required on summary judgment, the facts are viewed in a light most favorable to the non-movant. *Bogren v. Minnesota*, 336 F.3d

FILED 9-17-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

399, 403 (8th Cir. 2000).

Verlin Simmons started Simmons, Inc. in 1988 and is its president. Verlin Simmons May 21, 2001 Aff. ("Verlin Aff.") ¶ 1. Verlin's son Val Simmons is co-owner and vice-president of Simmons, Inc. Val Simmons May 21, 2001 Aff. ("Val Aff. ") ¶ 1. In 1991, Verlin Simmons envisioned a dual-runner ski that would improve the handling and operation of the snowmobile. Verlin Aff. ¶ 3. The first prototype of the Simmons, Inc. dual-runner ski was made in November of 1992. *Id.* ¶ 5; Val Aff. ¶ 4. On December 9, 1992, Verlin Simmons filed two patent applications, No. 07/988,231 ("'231 Application") for a snowmobile ski and No. 07/988,820 ("'820 Application") for a "Snowmobile Ski Flexing Apparatus." Colling Aff. Exs. A, B.

Simmons, Inc. used a wood mold to create a dual-runner ski and first sold the ski in January of 1993. Verlin Aff. ¶ 6; Val Aff. ¶ 5; Verlin Simmons Dep. at 56, 59. During 1993, Verlin Simmons continued working on the dual-runner ski design. Verlin Aff. ¶ 9; Val Aff. ¶ 7. During July of that year, Simmons, Inc. contracted with a manufacturer to create a mold of the dual-runner ski design for mass production. Verlin Aff. ¶ 11, Exs. B, C; Val Aff. ¶ 9. Simmons, Inc. began selling the dual-runner skis under the Simmons Flexi-Ski trademark in September of 1993. Verlin Aff. ¶ 12. The '820 Application and '231 Application were abandoned in October and December of 1993, respectively. Colling Aff. Exs. C, D. On March 15, 1994, Verlin Simmons filed another application concerning the Flexi-Ski, No. 09/213,950 ("'950 Application"). *Id.* Ex. F. The '950 Application was eventually issued as Patent Number No. 5,936,594 ("'594 Patent") on November 17, 1998, and is the subject of the instant infringement action. *Id.* Ex. G.

On November 12, 1999, Simmons, Inc. brought claims against Koronis, another

snowmobile part manufacturer, for infringing its '594 Patent. Simmons, Inc. specifically alleges that Koronis is infringing claims 1-3 and 6-12 of its '594 Patent. Colling Aff. Ex. O at 5.

## III. DISCUSSION

Koronis asserts two grounds in support of its Motion for Summary Judgment of invalidity of the Simmons, Inc. '594 Patent. Koronis avers that (1) all claims of the '954 Patent are invalid due to an on-sale bar; (2) claims 1-3, 6, 9, 10, and 11 are also invalid as anticipated by a prior patent; and (3) claims 7, 8, and 12 are also invalid as obvious. In response, Simmons, Inc. seeks summary judgment of the validity of claims 1-3 and 6-12 of the '594 Patent.

A patent is presumed valid, and each claim of a patent is presumed valid independently of the validity of other claims of the patent. 35 U.S.C. § 282. As a result, a party wishing to invalidate a patent by either the on-sale bar, anticipation, or obviousness, must establish the invalidation by "clear and convincing" evidence. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1480 (Fed. Cir. 1998).

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In a Rule 56 motion, the moving party "bears the initial burden of proving that summary judgment is appropriate." *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994) (citations omitted). A movant "must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto" when asking for summary judgment based upon an affirmative defense on which they will bear the burden at trial. *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999); *cf. Herndon v.*

*Mass. Gen. Life Ins. Co.*, 28 F.Supp.2d 379, 382 (W.D. Va. 1998) (quoting 11 Coquillette, et al., *Moore's Federal Practice* § 56.13(1) (3d ed. 1987)) ("[F]or a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must . . . adduce evidence which supports the existence of each element of its affirmative defense, and the evidence must be 'so powerful that no reasonable jury would be free to disbelieve it.'"). Once the movant meets the appropriate burden, the nonmovant must expressly set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In a summary judgment motion, the evidence is viewed "in the light most favorable to the nonmoving party." *Bogren*, 336 F.3d at 403.

Furthermore, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. Because this is a summary judgment motion, Koronis must prove the invalidity of Simmons, Inc.'s patent by clear and convincing evidence, such that no reasonable jury could find otherwise. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). Alternatively, a moving party seeking to uphold the validity of a patent at the summary judgment stage must show that the nonmoving party failed to produce clear and convincing evidence on an essential element of a defense. *Id.*

**B. Invalidation**

**1. On-Sale**

A patent is invalid by reason of the on-sale bar under 35 U.S.C. § 102(b) if the invention was on sale in this country more than one year prior to the application date for the patent in the United States. *Helifix*, 208 F.3d at 1349. At the hearing, Koronis argued that Verlin

Simmons testified in his deposition that Simmons, Inc. was selling skis encompassing the claims of the '594 Patent in January of 1993. As part of their response to this allegation, Simmons, Inc. asserted that they have applied for a revival of the abandoned '231 Application with the United States Patent and Trademark Office ("PTO"). Pl.'s Mem. at 18. Simmons argued that if the '231 Application is revived, the '594 Patent may refer back to the '231 Application and use its earlier December 9, 1992 filing date to avoid any on-sale bar resulting from January 1993 sales. *Id.* Koronis responded that at least some of the claims are still invalid under the on-sale bar because they are not present in the '231 Application and thus are controlled by the '594 Patent's application date. Def.'s Reply Mem. at 9.

By letter of August 13, 2001, Simmons, Inc.'s attorney notified the Court that the PTO granted its petition to revive the '231 Application. This fact raises issues that, because of their speculative nature at the time, were only superficially discussed in the briefs and hearing on the matter. In light of these changed circumstances subsequent to the briefing and hearing on the matter, neither summary judgment motion is proper at this time. The Court withholds resolution on the on-sale bar issue until such time as it is again raised by the parties.

**2. Anticipation**

Koronis also asks for summary judgment of the infringement claims on the ground that Claims 1-3, 6, 9, 10, and 11 of the '594 Patent are invalid as anticipated by a prior patent under 35 U.S.C. § 102(b). The prior patent Koronis asserts anticipates these claims is United States Design Patent 256,224 ("Fritz Patent"), which was patented by Lawrence Fritz in 1980. Koronis also alleges that skis made by Fritz related to this patent anticipate the claims.

Section 102(b) provides that "[a] person shall be entitled to a patent unless. . . the

invention was patented or described in a printed publication in this or a foreign country or in public use. . . more than one year prior to the date of the application for the patent in the United States." The anticipation analysis comprises two steps. First, the scope of each claim must be construed, which is a question of law for the court. *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). The meaning and scope of the claim is determined from the specification, namely the claim language and written description. *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1333 (Fed. Cir. 1998); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1461 (Fed. Cir. 1998). The disclosure need not be express, but may anticipate by inherency where it would be appreciated by one of ordinary skill in the art. *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995). Although a court usually cannot read a limitation from the written description into the claims, "claims must be read in view of the specification, of which they are a part." *SciMed Life Sys. v. Advanced Cardiovascular*, 242 F.3d 1337, 1340-41 (Fed. Cir. 2001).

The second query concerns a comparison of the construed claim to the prior art. *Key Pharm.*, 161 F.3d at 714. For a claim to be anticipated under this section, "every limitation of a claim must identically appear in a single prior art reference." *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997). "This comparison process involves fact-finding, and is for the fact finder in the first instance." *Key Pharm.*, 161 F.3d at 714. Here, the prior art is the Fritz Patent. Although Koronis infers that two of Fritz's alleged skis are also relevant prior art, the claim comparison in its brief is primarily limited to the Fritz Patent itself.

As a design patent, the Fritz Patent comprises of only diagrams and does not have a written specification. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d

1113, 1116 (Fed. Cir. 1998). Where the issue is a design patent's anticipation of a design patent, the claim comparison is limited to the "designs' overall visual similarity" in the eye of an ordinary observer. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Simmons, Inc. proffers that this fact limits design patents to the "ornamental design of the article, rather than its functional qualities." Pl.'s Mem. at 24. This limitation, however, concerns the application for, and issuance of, the design patent and not the design patent's ability to anticipate future art. *In re Aslanian*, 590 F.2d 911, 914 (C.C.P.A. 1979). In fact, "the specific disclosure of structure in a design patent application may inherently teach functional features." *Id.* (citations omitted).

Claim 1 of the '594 Patent is:

> A snowmobile ski, comprising: a base extending in a longitudinal direction and having a bottom for moving over snow, the base also extending in a lateral direction between the first edge and a second edge thereof and having a top adapted to be connected to a snowmobile; a first side portion extending in the longitudinal direction and extending downward form the first edge; a second side portion extending in the longitudinal direction and extending downward from the second edge; a first guide rod disposed on a bottom of the first side portion; and a second guide rod disposed on a bottom of the second side portion.

Claim 1 clearly requires three basic structures: a ski base that runs roughly parallel to the ground, and two "portions" that run downward and longitudinally from the base that are approximately perpendicular to the ground.

In response to its burden to prove by clear and convincing evidence that every limitation in Claim 1 is present in the Fritz Patent, Koronis sets forth the language of Claim 1 and reproduces color coded versions of Figures 2 & 3 of the Fritz Patent corresponding to each limitation of Claim 1. Koronis then argues "[a]s demonstrated by the FIGs. 2 & 3, and by the

photographs, the Fritz Patent/Twin Track Ski includes each element of Claim 1 and thus anticipates Claim 1 of the '594 Patent." Def.'s Mem. at 18.

Questions of fact exist as to whether the "clear and convincing" standard has been met with regard to every limitation of Claim 1. First, the Koronis' coloring of Figure 2 is not entirely consistent with Claim 1, or the coloring of Figure 3. While the coloring of Figure 3 shows that the side portions continue all the way to the front of the ski, Figure 2's coloring represents that the side portions end somewhere between the middle and front of the ski. *Id.* Most importantly, Koronis' colored version of Figure 2 seemingly indicates that both side portions do not extend downward from their respected edges of the base as required by Claim 1. *Id.* Instead, Koronis' Figure 2 pictures the base as running downward, perpendicular to the ground. If the base runs downward, it is difficult for the side portions to also extend downward while at the same time creating an edge with the base, as is required by Claim 1. In fact, this is exactly the problem with the comparison of the Fritz Patent and Claim 1 noted by Simmons, Inc.'s patent expert. Nikolai Aff. ¶ 5. Accordingly, Koronis has failed to submit clear and convincing evidence of the invalidity of Claim 1 such that no reasonable jury could find otherwise. *See Eli Lilly*, 251 F.3d at 962. On the other hand, Koronis has clearly raised a sufficient question of material fact on the anticipation of Claim 1 to avoid summary judgment of its defense.

Where there are questions of fact as to the invalidity of an independent claim, there are also questions of fact as to the invalidity of a claim that is dependent on it. *See Harntess Int'l, Inc. v. Simplimatic Eng'g, Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987). Because Claims 2 & 9 are dependent on Claim 1, Koronis is not entitled to summary judgment of invalidity on either claim. Likewise, Claim 3 is not amenable to summary judgment because it is dependent on Claim 2.

Since Koronis' argument that Claim 10 is anticipated by the Fritz Patent is solely based upon the anticipation of Claim 1 & 9, there remain questions of fact as to its anticipation. The fact that Koronis' argument that Claim 11 is anticipated is dependent on the anticipation of Claims 2 & 10 means that summary judgment is not appropriate with regard to Claim 11. However, Koronis' arguments have properly raised genuine issues of fact regarding whether Claims 2, 3, 9, 10, and 11 are anticipated, thwarting Simmons, Inc.'s Motion for Summary Judgment as to the validity of those claims.

The final claim Koronis asserts is anticipated by the Fritz Patent is Claim 6. Claim 6 reads:

> A snowmobile ski as recited in Claim 2, wherein the base further comprises an upturned front portion having an front portion bottom, and further comprising a concavity in the front portion bottom, such that snow is funneled past the front portion into the channel when the snowmobile ski is in use.

Claim 6 requires that the front portion bottom be concave. The dictionary defines "concavity" as something "hollowed or rounded inward like the inside of a bowl" or "arched in." Webster's Third New International Dictionary, 3d ed. (1993). The "Summary of the Invention" in the '594 Patent's specifications indicates that the "bottom of the upwardly curved forward portion of the ski is slightly concave." '594 Patent, col. 2, ll. 56-57. It further indicates that this "enhances flotation" in deep snow. *Id.* col. 1, ll. 18-25, col. 2, ll. 50-53. This concave, or arched in, property of the bottom front portion of the '594 Patent is further illustrated by the contour relief lines visible in Figures 1 & 2 in the '594 Patent.

Koronis asserts that the bottom portion of the Fritz Patent ski is concave. Def.'s Mem. at 19-20. It is evident from Figure 3 of the Fritz Patent that the design pattern does not evidence a

concave bottom portion by "clear and convincing evidence." In the skis Koronis alleges were developed from the patent, the front bottom portion is not "arched" or "rounded inward like the inside of a bowl". Fritz Decl. Exs. B, E. Koronis has failed to produce clear and convincing evidence upon which a reasonable jury could invalidate Claim 6 on the grounds that it is anticipated by the Fritz Patent. Simmons' summary judgment motion on Claim 6 is granted. *See Eli Lilly*, 251 F.3d at 962.

**3. Obviousness**

Patents may be invalid as obvious if the differences between the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. *See* 35 U.S.C. § 103. Koronis asserts that the three other claims of the '594 Patent at issue in the case, Claims 7, 8 and 12, are invalid as obvious. Like anticipation under § 102, invalidity on obviousness grounds must be proved by clear and convincing evidence. *Kahn*, 135 F.3d at 1480. Patents already issued enjoy a strong presumption of validity in infringement proceedings. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). While there may be underlying determinations of fact, obviousness is ultimately a determination of law. *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1334 (Fed. Cir. 1998). The underlying factual determinations include: "(1) the scope and content of prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness." *Id.*

Koronis argues that Claims 7 & 12 are rendered obvious by a combination of the Fritz Patent and another Patent, No. 4,083,577 ("Ford Patent"), invented by Howard Ford. Ford Patent, cols. 1-2. Because Claim 7 relies on Claim 1, which has not been found invalid, questions of fact necessarily remain as to the invalidity of Claim 7. *See Harntess*, 819 F.2d at 1108.

There are questions of fact as to whether the Ford Patent is analogous art for invalidity purposes. The Ford Patent is evidently for a down-hill ski and not a snowmobile ski. Ford Patent, cols. 1-2. Koronis has not presented any evidence that it is analogous art. Meanwhile, both Verlin and Val Simmons, as well as Simmons, Inc.'s patent expert, testified that as a down-hill ski it would not be considered as relevant prior art for development of a snowmobile ski. Val Aff. ¶ 15; Verlin Aff. ¶ 21; Nikolai Aff. ¶ 10. Whether a patent is "analogous" art for obviousness purposes is a question of fact for the jury. *Jurgens v. McKasy*, 927 F.2d 1552, 1558 (Fed. Cir. 1991).

Like Claim 6, Claim 12 requires that the ski have a bottom portion that is concave. In attempting to prove the obviousness of the concavity limitation, Koronis relies exclusively on the "concavity" of the Fritz Patent. Def.'s Mem. at 24. As discussed above, there is no question of fact that the Fritz Patent does not teach or disclose any concavity. Thus, summary judgment is awarded to Simmons, Inc. on Koronis' invalidity defense concerning Claim 12.

The only remaining claim to be discussed is Claim 8. Claim 8 is dependent on Claim 7. Because Claim 7 is not invalid at this time, it follows that there are questions of fact as to the validity of Claim 8. *See Harntess*, 819 F.2d at 1108. Both summary judgment motions are denied on Claim 8.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Summary Judgment Motion is **DENIED** [Doc. No. 51].

2. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 65] is **DENIED in part**, and **GRANTED in part**. As to Defendant's invalidity defense to Claims 6 & 12, summary judgment is granted. As to Defendant's invalidity defense of the remaining claims, summary judgment is denied.

3. Plaintiff's Motion to Stay [Doc. No. 66] is **DENIED** as moot.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: September 17, 2001