UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Simmons, Inc,
a Utah Corporation,

Plaintiff,

vs.

Koronis Parts, Inc.,

Defendant.

ORDER
and
REPORT AND RECOMMENDATION

Civ No. 00-1984 (ADM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 10th day of February, 2003.

## I. Introduction

This matter comes before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion to Enforce Settlement Agreement and for Attorney Fees, upon the Defendant's Motion to Deny the Plaintiff's Motion to Enforce Settlement Agreement and for Attorney Fees, and upon defense counsel's Motion to Withdraw as Counsel. A Hearing on the Motions was held on September 19, 2002, at which time, the Plaintiff appeared by Christopher K. Larus, Esq., and the Defendant appeared by Douglas J. Nill, Esq.[1]

---

[1]On February 21, 2002, Kinney & Lange, the law firm which had (continued...)

FEB 10 2003

117

For reasons which follow, we recommend that the Plaintiff's Motion to Enforce the Settlement Agreement be granted, and that the Defendant's obverse Motion be denied.[2] Further, we deny both parties' Motions for Attorney's Fees.

II. Factual and Procedural History

On August 21, 2000, the Plaintiff commenced this patent infringement action against the Defendant. In November of 2001, the parties were involved in settlement discussions, and the parties agree that, on December 5, 2001, they reached an accord on the terms of a settlement. Subsequently, on December 6, 2002, the

---

(...continued)
previously represented the Defendant, moved for leave to withdraw from that representation. Soon thereafter, on March 26, 2002, Douglas J. Nill, Esq., filed a notice of substitution of counsel, in which he sought leave to replace Kinney & Lange as the Defendant's counsel of record. See, D. Minn. LR83.7(b)(requiring leave of Court when substitution occurs within 90 days, or less, in advance of a Trial setting). In an Order dated April 4, 2002, we denied that Motion as moot, on the ground that we lacked jurisdiction over the action. However, by Order dated June 18, 2002, the District Court confirmed the Court's jurisdiction in this matter. At the start of the Hearing, absent any objection from the parties, we granted Kinney & Lange's Motion to Withdraw, as it would seem axiomatic that an attorney can not adequately, nor professionally, represent a client which has terminated that attorney's services, as is the case here.

[2]The parties' respective Motions were referred to us for a recommended disposition. Given the cross-Motions to enforce the parties' settlement, the Motions are potentially dispositive. See, Transclean Corp. v. MotorVac Technologies, Inc., 2001 WL 31185886 at *2 (D. Minn., September 30, 2002)(treating a Motion to Enforce Settlement as dispositive).

terms of the agreement were memorialized in a letter from counsel for the Plaintiff, to counsel for the Defendant, which outlined the "basic terms" of their settlement. Those terms included an agreement that the Defendant would be granted a nonexclusive license, in exchange for the payment of a royalty to the Plaintiff on future sales of any of the Defendant's current products which, allegedly, infringed the patent-in-suit. In addition, the letter expressly noted that the finalized Settlement and Licensing Agreements would contain the "usual provisions (e.g., mutual releases, marking of products, record keeping, etc)." On that same day -- December 6, 2002 -- Plaintiff's counsel also sent a letter to the District Court, the Honorable Ann D. Montgomery presiding, asking that this case be removed from the Court's Trial calendar, as the parties had reached a settlement.

After that initial agreement, counsel for both parties set about drafting the Licensing and Settlement Agreements. The provisions, which are currently being challenged, appeared in the early drafts of the Settlement Agreement without objection or requested changes. According to the testimony of Edward H. Webb ("Webb"), who is the President of the Defendant, the Defendant first became aware of the releases on December 17, 2001. Webb further testified that he informed his then-attorney that the language was not acceptable, insofar as it sought to release the

Plaintiff's "agents," employees, "attorneys," distributors, and customers. Webb introduced a letter, which he sent to his then-counsel, which purports to record his objection to the noted language of the release. Defendant's Exhibit 8.

The drafting of the Settlement Agreement continued and, by January 4, 2002, it appears that the parties had largely accomplished their task as, on that day, counsel for the Plaintiff sent to Defendant's counsel a "marked up copy of the Settlement Agreement and Non-Exclusive License Agreement." See, Exhibit C attached to Affidavit of Alan M. Anderson. The reciprocal release provisions were contained in Paragraphs Four and Five of the Settlement Agreement. Paragraph Five, which is now the disputed paragraph, reads as follows:

> Subject to the foregoing conditions precedent, [the Defendant], for itself and its agents, successors, assigns, authorized distributors, and customers, does hereby forever release and discharge [the Plaintiff], and [its] present and past agents, employees, officers, directors, attorneys, successors, assigns, heirs, executors, authorized distributors, and customers of and from any and all actions, claims, counterclaims, obligations, causes of action, promises, damages, costs, expenses, liabilities, and demands, known or unknown, arising out of or in any way related to infringement, validity, or enforceability of the '594 Patent which occurred prior to the Effective Date of this Agreement.

Id. at p. 3.

On January 14, 2002, Defendant's counsel wrote to Plaintiff's counsel, enclosing "changes to the Settlement and License Agreements" "for the Plaintiff's review." See, Exhibit B. attached to Affidavit of Alan M. Anderson. The letter referenced a new Paragraph Twelve in the Settlement Agreement, as well as modifications to Paragraph Seventeen of the Licensing Agreement. Notably the letter contained no mention of any changes, requested or effected, to the language of the releases contained in Paragraphs Four, or Five, of the Settlement Agreement.

By letter dated January 16, 2002, the Plaintiff's counsel transmitted copies of the Settlement Agreement, the Stipulation of Dismissal with Prejudice, and the License Agreement, to counsel for the Defendant for execution. The letter explained that the Defendant's proposed Paragraph Twelve had not been included in that draft version, but again, no mention was made of the releases found in Paragraphs Four and Five. According to the Plaintiff's counsel, and not denied by the Defendant, "shortly after [those Agreements] were sent, counsel for [the Defendant] contacted [the Plaintiff's counsel] and stated that those documents were acceptable and that the settlement would be finalized on those terms." Anderson Affi-

davit, at ¶ 6. The Defendant executed the License Agreement,[3] but has never executed the Settlement Agreement.

## III. Discussion.

Both parties ask that we enforce the Settlement Agreement, and the only dispute arises as to what terms should be included in the final Agreement. The Defendant argues that the parties reached agreement as to all of the provisions of the Settlement Agreement, except the release provisions as they relate to the release of the Plaintiff's attorneys. Specifically, the Defendant contends that, on December 5, 2001, the parties agreed to the licencing, and royalty terms of the settlement, and also to the "usual" releases but, in the Defendant's view, a release of the Plaintiff's attorney is not "usual." As a result, although the Defendant asks us to enforce the Settlement Agreement, it also requests that we redact that provision which would release the Plaintiff's counsel from future claims by the Defendant.[4]

---

[3]Apparently, the Defendant executed that Agreement on February 8, 2002, but the executed copy was not forwarded to the Plaintiff's counsel.

[4]There is nothing, in law or fact, which supports the Defendant's invitation, that we redraft the release language to his liking. While current counsel for the Defendant initially maintained that a release as to an opponent's attorney was against public policy, counsel was unable to articulate a cogent argument in support of that contention, must less controlling, persuasive, or even prudential authority. Even if the Defendant had a viable cause of (continued...)

For its part, the Plaintiff asks that we enforce the Settlement Agreement in its entirety, and argues that, when the Defendant's counsel represented that the version of the Settlement Agreement, which was mailed to him on January 16, 2002, was acceptable, the Defendant was bound by the terms of that settlement. The Defendant counters, however, that its prior attorney had no authority to bind it to the release terms, because the Defendant would not have agreed to those terms. Notably, there is no material evidence, in the Record presented, that the Defendant had informed the Plaintiff, that negotiations with the Defendant's then-attorneys, was at the Plaintiff's peril.

A. The Choice of Law Question.

Although neither party has addressed the issue, as a first step in our analysis, we address what law we should apply. First, we conclude that State law, rather than Federal law, should govern. In so concluding, we are guided by the Court's analysis, in Transclean Corp. v. MotorVac Technologies, Inc., 2002 WL 31185886 at *3 (D. Minn., September 30, 2002), where the issue involved the enforceability of a settlement agreement in a patent suit. There, the plaintiffs had argued that Federal law should

---

[4](...continued)
action against the Plaintiff's legal counsel, we are aware of no public policy which would prohibit the Defendant from granting a release as to that claim.

apply. Id. at *3. The Court acknowledged that, in Bergstrom v. Sears, Roebuck and Co., 532 F. Supp. 923, 931 (D. Minn. 1982), Federal law was applied to the enforceability of a settlement agreement, when the underlying dispute was governed by Federal law. However, the Court, in Transclean, disagreed with that conclusion, and noted "many cases in the Eighth Circuit and other courts which hold that state law applies to settlement agreements," and that those cases have "undermine[d] any persuasive authority" Bergstrom might have otherwise had. Id., citing, Makins v. District of Columbia, 277 F.3d 544, 547 (D.C. Cir. 2002); Gjerlov v. Schuyler Laboratories, Inc., 131 F.3d 1016, 1020 (Fed. Cir. 1997); Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 931 (Fed. Cir. 1994); S & T Mfg. Co. v. Hillsborough County, Fla., 815 F.2d 676, 678 (Fed. Cir. 1987); cf., In re Airline Ticket Commission Antitrust Litigation, 268 F.3d 619, 623 (8th Cir. 2001)(accepting the parties' joint contention that a settlement be construed under Minnesota's contract law); Sheng v. Starkey Laboratories, Inc., 117 F.3d 1081, 1083 n. 1 (8th Cir. 1997)(applying Minnesota law to a settlement in a Title VII action).

In particular, the Court referenced the reasoning in Sears, Roebuck & Co v. Sears Realty Co., Inc., 932 F. Supp. 392 (N.D.N.Y. 1996), where the Court had "extensively discussed this question, and explicitly rejected the reasoning embraced by Bergstrom." Id.

at *4. In Transclean, the Court concluded, as had the Court in Sears, that when the issue presented arises from a contract, then State law should apply. Id. We agree, and proceed to consider which State's law should apply.

Here, the Plaintiff is a Utah corporation, while the Defendant is a Minnesota corporation, and so, arguably, the law of either of those States could apply. The Plaintiff, however, has applied Minnesota law, and has not suggested that we consider the laws of Utah, where it was incorporated, and the Defendant has not contested that choice. Thus, given the absence of any objection, we conclude that Minnesota law should apply.[5]

B. The Enforcement of the Settlement Agreement.

Under Minnesota law, "to constitute a full and enforceable settlement agreement, all the essential terms must be agreed upon." Transclean Corp. v. MotorVac Technologies, Inc., supra at *8, citing Ryan v. Ryan, 193 N.W.2d 295, 297 (Minn. 1971); Jallen

---

[5]In Transclean Corp v. MotorVac Technologies Inc., supra at *7, the Court considered whether Minnesota, or California law, should apply, and concluded that Minnesota law should apply, in part, because the application of that law was foreseeable, given our Court of Appeals practice of applying State law in the resolution of settlement disputes, and in view of the parties' expectation that the settlement would resolve a pending action in the Federal Courts of Minnesota. Here, too, the parties understood that the settlement would dispose of this action and, in fact, it was the parties' expectation that the Settlement Agreement would be "construed and governed in accordance with the laws of Minnesota." See, Exhibit A to the Affidavit of Alan M. Anderson, at p. 4.

v. Agre, 119 N.W.2d 739, 743 (Minn. 1963). Only those terms, upon which the settlement hinges, are to be considered material terms. See, Sheng v. Starkey Laboratories, Inc., supra at 1083. Accordingly, "[t]he fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." Id., citing Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985); see also, Transclean Corp. v. MotorVac Technologies, Inc., supra at *8; Trnka v. Elanco Pros. Co., 709 F.2d 1223, 1226 n. 2 (8th Cir. 1983).

The question of whether a particular term is material "is a legal determination for the Court." Transclean Corp. v. MotorVac Technologies, Inc., supra at *8. Here, we think that the only material terms of the settlement, which was reached by the parties, were the granting of the nonexclusive License Agreement to the Defendant, and the amount of royalty that would be paid, by the Defendant, in exchange for that License Agreement. While we are mindful that the release provisions, insofar as they impact upon Plaintiff's counsel, now appear to have importance to the Defendant, since the Defendant may want to pursue legal claims against the Plaintiff's attorney in the future, there is simply no evidence that the parties negotiated, or even discussed, anything that would have disclosed such an intent, on the Defendant's part, as an element, let alone an essential element, of the settlement.

In fact, at the Hearing, Webb testified that the issue of the language of the releases had not been discussed prior to the date on which the parties reached their settlement -- December 5, 2001. Further, the fact that the language of the releases was not a material term to the settlement is evidenced by Webb's own notes from the meeting on December 5, as they only reflect interest in the license, and royalty payments for that license. See, Exhibit 12. Accordingly, we find that a contract to settle this case existed between the parties, as of December 5, 2001, and we will enforce that agreement. See, Sheng v. Starkey Laboratories, Inc., supra at 1083.

We turn then to whether the Defendant should be bound to the particular release provision approved by his attorney, or whether a select portion of that release should be redacted. The Defendant does not, and could not claim, that there was no agreement to have releases included in the Settlement Agreement. Instead, it claims that its attorney did not have the authority to approve those particular releases, although precious little evidence is offered to that effect. According to the Defendant, absent express authority to bind it to such language, its attorney could not do so, and therefore, since its attorney lacked the authority to accept those releases, we must not enforce that provision. We disagree.

Under Minnesota law, an attorney cannot compromise his or her client's case, through settlement, without express authority from his or her client. See, Schumann v. Northtown Ins. Agency, Inc., 452 N.W.2d 482, 484 (Minn. App. 1990), citing Gibson v. Nelson, 111 Minn. 183, 188, 126 N.W. 731, 733-34 (1910). Thus, "attorneys must have authorization to settle in order to bind their clients," Transclean Corp. v. MotorVac Technologies, Inc., supra at *6, citing Minnesota Statutes Section 481.08, and that such authority must be express. Id., citing Rosenberg v. Townsend, Rosenberg & Young, Inc., 376 N.W.2d 434, 437 (Minn.App. 1985). Here however, the Defendant is not contending that its attorney accepted a settlement offer from the Plaintiff without the express authority to do so. Rather, what is clear from the facts of the case is that the Defendant itself accepted the material terms of settlement on December 5, 2001. There is no doubt that the Defendant entered into a contract to settle this litigation on that date, and must be bound by that agreement. There is also no doubt that the agreed upon settlement would include provisions that the Defendant would be granted a license, would pay the Plaintiff royalties and, when reduced to writing, that the Settlement Agreement would contain releases.

"Once it is shown, however, as in the present action, that an attorney has entered into an agreement to settle a case, the party

who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given." Greater Kansas City Laborers Pension Fund v. Paramount Industries, Inc., 829 F.2d 644, 646 (8th Cir. 1987), citing Turner v. Burlington Northern R.R. Co., 771 F.2d 341, 346 (8th Cir. 1985). "This is a heavy burden." Id. "Moreover, where a client has created the appearance that his attorney has authority to settle a case and the attorney exceeds that authority in some way, if the adversary relies on the settlement to its detriment, the client may be estopped to deny his attorney's authority." Barry v. Barry, 172 F.3d 1011, 1015 (8th Cir. 1999), citing Austin Farm Center, Inc. v. Austin Grain Co., 418 N.W.2d 181, 186 (Minn.App. 1988), and Bergstrom v. Sears, Roebuck & Co., supra at 933.

The Record demonstrates that, on December 5, 2001, Webb participated with his attorneys in negotiating the Settlement Agreement which, among other matters, delegated to the respective attorneys the responsibility of reducing the settlement to writing. Webb admits that, at no time, did he advise the Plaintiff, or direct his attorneys to advise the Plaintiff, that his attorneys did not have authority to bind the Defendant in the terms of any Settlement or Licensing Agreement. See, McGee v. Breezy Point Estates, 283 Minn. 10, 22, 166 N.W.2d 81, 89 (1969)("Clearly at no time were respondents advised by plaintiffs or anyone that [agent]

did not have power and authority to speak or negotiate for plaintiffs.”). Given the Record presented, we find that the Defendant’s attorneys had the authority to bind the Defendant in the negotiation of a settlement with the Plaintiff through, at least, December 5, 2001, and that, thereafter, they had apparent authority to bind the Defendant to the specifics of the Settlement Agreement, inclusive of the language of any releases.

In this respect, the operative facts closely parallel those before the Court in Transclean, where the Court observed, as follows:

> MotorVac does not claim it was unaware of its attorneys’ acceptance, or of the process by which the agreement was reduced to writing. On the contrary, the record contains ample evidence that MotorVac was aware of counsel’s actions. * * * Despite its awareness of the agreement, however, MotorVac did not assert that its counsel lacked authority to settle until more than one month after counsel accepted the offer on MotorVac’s behalf. Therefore, the Court finds that if Minnesota law applies, MotorVac is bound by the alleged settlement under the theory of implied acceptance.

Transclean Corp. v. MotorVac Technologies, Inc., supra at *6.

When the Defendant’s legal counsel informed counsel for the Plaintiff, shortly after January 16, 2002, that the terms of the Settlement and License Agreements were acceptable, the language of the challenged release, which waives any claims that the Defendant

might have against counsel for the Plaintiff, became a legal, and enforceable contract.

What the Defendant asks us to do, and what we will not do, is to strike an agreement that was never bargained for, nor agreed upon. Had the language of the release been material to a final settlement, it was an unspoken intent that was never voiced in a settlement demand or offer. While the Defendant urges that the release language serves an improper purpose and, as a matter of public policy, should not be enforced, we are not so persuaded. Parties routinely release, and seek a release, of their agents in terms of settlement agreements, and just as routinely, include such provisions in their final settlement documents. The fact that the release language, here, specifically refers to "attorneys" as well as "agents," does not transform the release proviso into something illegal, or otherwise inimical to public policy. In this respect, the release is of the "usual" character, which counsel for each party was charged to draft. See, Exhibit 1 to Affidavit of Douglas J. Nill ("In addition, the settlement agreement and license agreement will include the usual provisions (e.g., mutual releases, marking of products, record keeping, etc.").

In sum, we find, and conclude, that the Settlement and License Agreements were legally negotiated, and resulted in final, enforceable contracts, and therefore, we recommend that the Plaintiff's

Motion to Enforce Settlement be granted, and that Judgment be entered dismissing the case with prejudice on the basis of the parties' Settlement Agreement.

C. The Question of Attorney's Fees.

Both parties have also sought an award of attorneys' fees, and for reimbursement of their costs, in bringing their respective Motions. The Plaintiff cites the Court's "inherent power to impose sanctions against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and claims that the Defendant has acted in bad faith by refusing to be bound to the Settlement Agreement that was voluntarily reached. Plaintiff's Memorandum, at 4, quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991), quoting, in turn, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975). The Defendant denies that accusation, and claims that, instead, it was the Plaintiff who acted in bad faith, by failing to simply redact the attorney release language from the Settlement Agreement, and that, accordingly, the Defendant is entitled to its costs and fees.

We conclude, however, that there has been no cogent showing that either parties' conduct has risen to a level which warrants the imposition of sanctions. In so concluding, we are mindful, given our past involvement in the case, that the parties were intensely at odds with each other. While, ordinarily, a settlement

brings peace, that is not always the case, as this litigation makes clear. In our view, the position of the Defendant closely approaches the sanctionable, and yet we note that the Defendant retained new counsel to address the issue, and counsel felt there was a responsible basis to challenge the settlement in this case. While we regard the Defendant's Motion as improvident, we do not regard it as vexatious, or wantonly oppressive. We close, however, with our observation that the Defendant's Motion comes dangerously close to such a characterization. Accordingly, we recommend that both parties' Motion for attorneys' fees, and costs, be denied.

NOW, THEREFORE, It is --

ORDERED:

That the Motion of Kinney & Lange to Withdraw from its Representation of the Defendant [Docket No. 92] is GRANTED, and attorney Douglas J. Nill, is substituted as Defendant's counsel.

RECOMMENDATION:

1. That the Plaintiff's Motion to Enforce Settlement Agreement [Docket No. 96] be granted, except to the extent that it seeks an award of attorneys' fees, which should be denied.

2. That the Defendant's Motion to Deny the Plaintiff's Motion to Enforce Settlement Agreement [Docket No. 101] be denied in its entirety.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Federal Rule of Civil Procedure 6(a), D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 28, 2003**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of the Hearing by no later than **February 28, 2003**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.